IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRANDON LEE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV 20-124-RAW-JAR |
| | ) | |
| JAMES YATES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On March 29, 2022, Defendants Knutson, Allbaugh, and Colbert were dismissed from this action. (Dkt. 111). The remaining defendants, with the exception of Defendant Warden James Yates, subsequently were granted summary judgment. (Dkts. 156). Under consideration is a motion for summary judgment by Defendant Yates. (Dkt. 144).

### I.   Background

Plaintiff's amended complaint alleges broad claims concerning the use of excessive force, the denial of medical care, and unconstitutional conditions of confinement, along with additional deprivations under the First, Fifth, Sixth, and Fourteenth Amendments during his incarceration at Davis Correctional Facility (DCF) in Holdenville, Oklahoma. (Dkt. 21 at 7-31). He specifically focuses on use of force incidents at the facility on July 25, 2019; November 22, 2019; and February 13, 2020. Defendant DCF Warden Yates seeks dismissal on the affirmative defense, among other things, that Plaintiff failed to exhaust his administrative remedies.

### II.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is

genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. Exhaustion of Administrative Remedies

Defendant Yates alleges that Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). He must properly complete all required steps of the grievance process to exhaust his administrative remedies. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. Dec.

28, 2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff about the incident. If that is unsuccessful, he may submit a request to staff (RTS) to the appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form. If the offender does not receive a response to his RTS within 30-60 calendar days of submission, he may submit a grievance to the reviewing authority, asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may submit a grievance within 15 days from the date of receipt of the RTS response, attaching the RTS with the response from the staff member. If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA), Personal Identity ARA, or Medical ARA, whichever is appropriate. The administrative process is exhausted only after all of these steps have been taken. (DOC OP-090124; Dkt. 144-3 at 8-17).

### IV. Plaintiff's Grievances

According to the affidavit by Terry Underwood, DCF Grievance Coordinator, Plaintiff submitted the following grievances between July 25, 2019, and June 4, 2020. None of the issues claimed in the grievances, however, were properly exhausted. (Dkt. 144-2, ¶ 6).

Grievance No. 2018-1001-350G, dated September 18, 2019 and received on September 24, 2019, was not properly completed, it bore no signature, and it did not request any relief. Transmitted with the grievance was a copy of another grievance that had not been previously submitted, seeking relief related to Nurse Goodwin. Plaintiff asked for Nurse Goodwin's name. (Dkt. 144-2, ¶ 7).

3

The grievance concerned complaints about Plaintiff's medical treatment. Therefore, it was sent to Ray Larimer, the Health Services administrator. The grievance was returned to Plaintiff unanswered by Ray Larimer, R.N., noting the specific deficiencies. Plaintiff was given ten (10) days to correct and resubmit. Nurse Larimer additionally noted: "Need answered RTS attached to grievance. Grievance form not complete. Address medical grievances to Ray Larimer, Health Services." No issues were exhausted by this grievance. ((Dkt. 144-2, ¶ 8).

Grievance No. 2018-1001-351G, dated September 18, 2019, was returned unanswered on October 11, 2019, because of identified submission defects. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 9; 144-4 at 12-23).

Grievance No. 2019-1001-00352-G, dated September 18, 2019, was returned unanswered on October 11, 2019, noting submission defects. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 10; 144-4 at 24-37).

Grievance No. 2019-1001-00403-G, dated November 12, 2019, was returned unanswered on November 25, 2019, because of identified submission defects. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 11; 144-4 at 38-43).

Grievance No. 2019-1001-00404-G, dated September 27, 2019, but received by the Grievance Coordinator on November 18, 2019 was returned to him unanswered on November 25, 2019, because of identified submission defects. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 12; 144-4 at 44-49).

Grievance No. 2019-1001-00405-G was dated October 31, 2019, but was received by the Grievance Coordinator on November 20, 2019. The grievance was not signed or properly completed and was returned unanswered. No issues were exhausted by this grievance submission. (Dkts. 144-

2, ¶ 13; 144-4 at 50-55).

Grievance No. 2019-1001-00406-G was dated October 31, 2019, but was not received in the Grievance Coordinator's office until November 20, 2019. The grievance was returned to Plaintiff unanswered on November 25, 2019, because of identified submission defects. He additionally was notified/warned that abuse of the grievance process would result in placement on grievance restriction. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 14; 144-4 at 56-61).

Grievance No. 2019-1001-00417-G, dated November 22, 2019, was received on December 4, 2019. The grievance was returned to him unanswered on December 10, 2019, because of identified submission defects. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 15; Dkt 144-4 at 62-65).

Grievance No. 2019-1001-00426-G, dated December 16, 2019, was received on December 20, 2019. It was returned to him unanswered by memorandum dated December 26, 2020, noting the identified submission defects. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 16; 144-4 at 66-70).

On December 31, 2019, consistent with the provisions contained in Oklahoma DOC Policy OP-090124, the facility warden determined Plaintiff had abused the administrative remedies process and placed Plaintiff on grievance restriction for one year, from December 31, 2019, until December 31, 2020. (Dkt. 144-4 at 71).

Grievance No. 2019-1001-00427-G, dated December 16, 2019, was received on December 20, 2019. It was returned unanswered by memorandum dated December 26, 2019, because of identified submission defects. Plaintiff was alerted that he had ten days to correct and resubmit his

grievance. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 17; 144-4 at 72-76).

Grievance No. 2019-1001-00436-G, dated December 20, 2019, was received on December 27, 2019. The grievance was returned unanswered on January 15, 2020, with a written memorandum specifically identifying the procedural defects in his submission and alerting Plaintiff that he had ten days to correct and resubmit his grievance. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 18; 144-4 at 77-80).

Grievance No. 2019-1001-00437-G, dated December 20, 2019, was received on December 27, 2019. It was returned unanswered on January 15, 2020, and a written memorandum was provided to Plaintiff specifically identifying the procedural defects in his submission. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 19; 144-4 at 81-84).

An inmate placed on grievance restriction is not prevented from filing a grievance. Section IX of OP-090124 sets out the steps an inmate placed on grievance restriction must take to file a grievance at any level of review. The grievance or appeal may proceed when the inmate meets the guidelines outlined in this procedure. (Dkts. 144-2, ¶ 24; 144-3, OP-090124, Section IX at 18-20).

Grievance No. 2019-1001-00438-G, dated December 20, 2019, was received on December 27, 2019. It was returned unanswered on January 15, 2020. A written memorandum was provided to Plaintiff, specifically identifying the procedural defects in his submission. No issues were exhausted by this grievance. (Dkts. 144-2; ¶ 20; 144-4 at 85-90).

Grievance No. 2019-1001-00439-G, dated December 20, 2019, was received by the Grievance Coordinator on December 27, 2019. It was returned unanswered on January 15, 2020. A written memorandum was provided to Plaintiff, specifically identifying the procedural defects in

his submission. No issues were exhausted by this grievance. (Dkts. 144-2, ¶ 21; 144-4 at 91-95).

Grievance No. 2019-1001-00440-G, dated December 23, 2019, was received on December 27, 2019. It was returned unanswered on January 15, 2020, because of identified submission defects. A written memorandum was provided to Plaintiff, specifically identifying the procedural defects in his submission. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 22; 144-4 at 95-101).

Grievance No. 2020-1001-00001-G, dated December 21, 2019, was received January 07, 2020. It was returned unanswered on January 15, 2020, specifically identifying the procedural defects in the submission. There is no record of Plaintiff's submitting an appeal of the facility grievance action. (Dkts. 144-2, ¶ 25; 144-4 at 102-107).

Grievance No. 2020-1001-00002-G, dated January 7, 2020, was received on January 10, 2020. It was returned unanswered by memorandum dated January 15, 2020, because of procedural errors. The memorandum specifically identified the procedural defects in the submission. There is no record of Plaintiff's submitting an appeal. No issues were exhausted. (Dkts. 144-2, ¶ 26; 144-4 at 108-113).

Grievance No. 2020-1001-00003-G, dated January 8, 2020, was received on January 13, 2020. It was returned unanswered on January 15, 2020, because of identified submission defects. Plaintiff was provided ten days to correct and resubmit. (Dkts. 144-2, ¶ 27; 144-4 at 135-40).

Plaintiff resubmitted Grievance No. 2020-1001-00003-G with a date of January 8, 2020. The grievance was returned unanswered on February 12, 2020, because of identified submission defects. A written memorandum was provided to Plaintiff specifically identifying the procedural defects in his submission. There is no record of Plaintiff's submitting an appeal. No issues were exhausted.

(Dkts. 144-2, ¶ 27; 144-4 at 114-134).

Grievance No. 2020-1001-00032-G, dated February 3, 2020, was received on February 7, 2020. It was returned unanswered by memorandum dated February 13, 2020, because of identified submission defects. The written memorandum specifically identified the procedural defects and noted that Plaintiff was given ten days to correct and resubmit. There is no record that he did so. Additionally, there is no indication that he appealed that decision to the ARA. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 28; 144-4 at 141-60).

Grievance No. 2020-1001-00055-G, dated February 3, 2020, was received on February 14, 2020. It was returned unanswered on February 24, 2020, because of identified submission defects. Plaintiff resubmitted the grievance on March 9, 2020. Relief was denied at the facility level on March 26, 2020, and Plaintiff submitted an appeal to the ARA. The ARA determined the grievance appeal had been filed improperly, and a return memorandum was dated May 11, 2020. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 29; 144-4 at 161-96).

Grievance No. 2020-1001-00070-G, dated February 19, 2020, was received on February 26, 2020. Relief was denied at the facility level on March 11, 2020. Plaintiff submitted an appeal to the ARA, which determined in an April 8, 2020, memorandum that the grievance appeal had been filed improperly. He was given ten days to properly resubmit the appeal, however, there is no indication he did so. No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶30; 144-4 at 197-199).

Grievance No. 2020-1001-00072-G, dated March 2, 2020, was initially received March 4, 2020. Relief was denied at the facility level on March 20, 2020, and Plaintiff submitted an appeal to the ARA. The ARA determined the grievance appeal was filed improperly, and a return

memorandum was dated May 11, 2020.  No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 31; 144-2 at 200-205).

Grievance No. 2020-1001-00080-G, dated March 6, 2020, was received on March 11, 2020. Plaintiff's Grievance was answered on April 9, 2020.  There is no record of Plaintiff's submitting an appeal.  No issues were exhausted by this grievance. (Dkts. 144-2, ¶ 32; 144-4 at 206-08).

Grievance No. 2020-1001-00082-G, dated March 3, 2020 was received March 6, 2020. Relief was denied at the facility level on March 20, 2020 and Plaintiff submitted an appeal to the ARA, which determined in a return memorandum dated May 11, 2020, that the grievance appeal was filed improperly.  No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 33; 144-4 at 209-214).

Grievance No. 2020-1001-00084-G, dated March 6, 2020, was initially received on March 11, 2020.  It was returned unanswered on April 29, 2020, noting that Plaintiff was on grievance restriction and had not properly submitted his grievance.  Plaintiff appealed that decision, however, the appeal also was returned unanswered, because it was received out of time, Plaintiff was on grievance restriction, and he had not submitted the proper documentation. (Dkts. 144-2, ¶ 34; 144-4 at 215-19).

Grievance No. 2020-1001-00087-G, dated January 7, 2020, was received on March 4, 2020. Plaintiff raised issues related to the grievance process.  Relief was denied at the facility level on March 20, 2020.  There is no record of Plaintiff's submitting an appeal to the ARA.  No issues were exhausted by this grievance submission. (Dkts. 144-2, ¶ 35; 144-4 at 220-24).

Grievance No. 2020-1001-00088-G, dated March 1, 2020, was received March on 4, 2020. Relief was denied at the facility level on March 20, 2020.  No issues were exhausted by this

grievance submission. (Dkts. 144-2, ¶ 36; 144-4 at 225-227).

Grievance No. 2020-1001-000114-G, dated March 12, 2020, was received on March 20, 2020. It was answered by the warden on April 2, 2020. There is no record of Plaintiff's submitting an appeal to the ARA. No issues were exhausted by this submission. (Dkts. 144-2, ¶ 37; 144-4 at 228-30).

Grievance No. 2020-1001-00115-G, dated March 12, 2020, was received on March 20, 2020. It was returned unanswered on April 1, 2020, with notations of several procedural errors. No issues were exhausted by this submission. (Dkts. 144-2, ¶ 38; 144-4 at 231-36).

Grievance No. 2020-1001-00116-G, dated March 12, 2020, was received on March 20, 2020, and returned unanswered on April 1, 2020. No issues were exhausted by this submission. (Dkts. 144-2, ¶ 39; 144-4 at 237-242).

Grievance No. 2020-1001-00140-G, dated April 9, 2020, was received on April 13, 2020, and returned unanswered. No issues were exhausted by the grievance. (Dkts. 144-2, ¶ 40; 144-4 at 243-249).

Grievance No. 2020-1001-00149-G, dated April 22, 2020, and was received on April 24, 2020. It was returned unanswered on April 29, 2020, noting procedural errors. Plaintiff was given an opportunity to resubmit but instead appealed the matter to the ARA. The appeal also was returned unanswered. No issues were exhausted. (Dkts. 144-2; 144-4 at 250-54).

Grievance No. 2020-1001-000188-G, dated June 2, 2020, was received on June 4, 2020. Plaintiff raised issues related to an incident on February 13, 2020. The grievance was returned unanswered on June 18, 2020 with a written memorandum specifically identifying the procedural defects in his submission. Plaintiff was housed at Oklahoma State Penitentiary (OSP) at that time.

On June 29, 2020, he refused to sign the return memorandum and a staff member at OSP noted on the return memorandum that Plaintiff had received a copy of the returned grievance. There is no record of Plaintiff's submitting an appeal to the ARA. No issues were exhausted by this submission. (Dkts. 144-2, ¶ 42; 144-4 at 255-62).

Defendant Yates notes that Plaintiff's medical records during the complained-of time period reflect that Plaintiff was seen by medical staff more than 30 times. He was seen as a result of the incidents of July 25, 2019, November 22, 2019, and February 13, 2020. Additionally, Plaintiff was seen by the facility's medical staff for health issues such as athlete's foot, jock itch, skin rash, nosebleed, routine mental health concerns, dental issues, teeth cleaning, headache, muscle strain, and facial spasms. Plaintiff submitted Requests for Health Services, and the submitted requests were timely addressed by medical staff. (Dkt. 144 at 15-16).

Plaintiff has filed a prolix response to Defendant Yates' motion for summary judgment. (Dkt. 145). He claims that Grievance Coordinator Terry Underwood did not submit all the grievances that he filed. *Id.* at 9. In his unclear pleading, Plaintiff complains that Underwood has undermined the grievance process and abused her authority. He asserts he was denied the proper form to "fight [a] write-up" on February 13, 2020, and he complains about the mail policies. *Id*. at 22, 24-26. He does not, however, demonstrate that he exhausted any of his grievances.

## V.   Conclusion

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there is no genuine dispute of material fact concerning whether Plaintiff's claims are exhausted. Therefore, summary judgment is GRANTED pursuant to Fed. R. Civ. P. 56(a).

**ACCORDINGLY,** Defendant James Yates' motion for summary judgment (Dkt. 144) is

GRANTED, and this action is DISMISSED in its entirety.

      **IT IS SO ORDERED** this 27th day of September 2023.

_____
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE